## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **TROY GERARD CHARLES** | : | **DOCKET NO.  2:12-cv-2980** |
| **VS.** | : | **JUDGE MINALDI** |
| **U.S. COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of disability insurance benefits and supplemental security income benefits.  This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

## I.
## PROCEDURAL HISTORY

On January 27, 2010, plaintiff filed an application for disability insurance benefits and supplemental security income benefits alleging disability beginning on January 1, 2010.  Tr. 142-48, 149-53.  He claimed disability due to dyslexia, high blood pressure, poor eye sight, and depression.  Tr. 59, 171.  The claims were initially denied on June 25, 2010.  Tr. 57-58, 59-65, 66-72.  Plaintiff requested and was granted an administrative hearing which was held on August 2, 2011.  Tr. 18-56.  Plaintiff was represented by a non-attorney representative at the hearing.

Tr. 33-34, 102.  Plaintiff, his aunt, and a vocational expert ("VE") testified at the hearing.

On July 1, 2011, the Administrative Law Judge ("ALJ") issued an unfavorable decision. Tr. 73-84.  In his decision, the ALJ found plaintiff had medically determinable impairments of obesity and affective disorder but that those impairments were not severe under the Act.  *Id.*

On March 10, 2012, plaintiff filed a request for appellate review of this decision.  Tr. 140, 309-10.  He submitted additional evidence to the Appeals Council in the form of a psychological evaluation conducted by Jerry L. Whiteman, Ph.D.  Tr. 311-12.  On September 21, 2012 the Appeals Council denied his request for review.  Tr. 1-4.  On November 28, 2012 plaintiff filed suit in this court appealing the determinations of the Commissioner.  Doc. 1.

## II.
## FACTS AND MEDICAL EVIDENCE

### A. *Facts*

Plaintiff was 31 years old on the date of the hearing which was held on August 2, 2011. Tr. 30.  He is married and has no children.  He testified that he last worked in 2008 as a stocker at Wal Mart and has worked in the past as barber, janitor, and dishwasher.  Tr. 31, 54.  He is a high school graduate and has a driver's license.  Tr. 236, 36.  He testified that he has looked for work but cannot find any.  Tr. 31.  He stated that he stays at home during the day and sits and watches television.  Tr. 33.  He cooks for himself but does not do any household chores.  Tr. 35.

Plaintiff stated that he was hospitalized in 2010 at Moss Regional Medical Center and was diagnosed with schizophrenia.  Tr. 37.  He admitted that he smoked marijuana every day before he was admitted to the hospital but stopped because the physicians at Moss Regional told him it was affecting his mind.  Tr.43.  He is taking medications currently prescribed by physicians at Moss Regional.  *Id.*  He testified that he suffers from anxiety, difficulty sleeping,

worrying, and roaming thoughts.  Tr. 40.  He described his childhood growing up with his mother who suffered from a mental illness as "traumatizing."  Tr.41.

Plaintiff's aunt, Marilyn Shaws Manigault, testified on his behalf.  She stated that she is plaintiff's mother's sister.  Tr. 44.  Plaintiff and his wife live in her house with her.  Tr. 45.  She testified that plaintiff's mother was diagnosed as bipolar, manic depressive when she was 30 years old and pregnant for plaintiff.  Tr. 49.  She stated that she observed plaintiff being both suspicious and argumentative before he was hospitalized.  Tr. 49, 51.

### B.  Medical Evidence

#### 1.  Bryan Bolwahnn, Ph.D.

At the request of disability services, plaintiff underwent a psychological evaluation conducted by Dr. Bryan Bolwahnn on March 26, 2010.  Tr. 238-40.  Plaintiff reported that he has a history of Bipolar Disorder although never formally diagnosed.  He stated that he is not taking any psychotropic medications.  Dr. Bolwahnn noted that plaintiff does not appear to have any deficits in social functioning. He noted that he plays the keyboard and is trying to put a band together with his friends who play instruments.  He further noted that he interacted properly during the exam.

Dr. Bolwahnn noted no impairments in his activities of daily living.  Plaintiff reported that he can dress himself, drive (he has a chauffeur's license), cook, feed the dogs, mow the lawn, and wash the dishes.  Plaintiff informed the doctor that he has mild vision problems, needs glasses, and was diagnosed with dyslexia.  Plaintiff stated that he began kindergarten on time, completed 12th grade, and was in special education classes.  He last worked as a stocker at Wal Mart and was reportedly fired for stealing.

Plaintiff's mental health complaints included feeling paranoid, having anxiety attacks, having difficulty finishing projects, being self-conscious, and depressed at times.  He stated that he has had some thoughts of suicide but no intent and has never attempted to hurt himself.

Dr. Bolwahnn's mental status exam revealed that plaintiff was dressed appropriately, eye contact was appropriate, and he was generally cooperative.  Dr. Bolwahnn noted that plaintiff did not appear depressed or anxious and there was no evidence of psychosis.  Plaintiff's memory was not impaired.  Plaintiff's intellectual functioning was estimated to be low average.  He could understand and follow simple instructions and his abstract reasoning was fair.

Following the exam Dr. Bolwahnn opined that plaintiff suffered from mild depression and anxiety.  He noted some mild mood concerns but stated that they do not appear to impact his overall performance or level of functioning.  Dr. Bolwahnn noted no visual deficits.  Based on the information presented, Dr. Bolwahnn determined that plaintiff was capable of handling funds with minimal supervision.  He noted his prognosis for improvement was guarded and that he may benefit from more intense mental health supports.

### 2. William Berzman, Ph. D.

On April 15, 2010, Dr. Berzman conducted a psychiatric review technique and determined that the overall evidence does not show severe limitations in mental functioning.  Tr. 62-63, 261.

### 3. Johnny Segura, M.D.

Plaintiff saw Dr. Johnny Segura for a consultative physical examination on May 15, 2010.  Tr. 262-65.  Plaintiff reported medical problems of high blood pressure, abdominal hernia, and depression.  He stated that he was recently admitted to the hospital for depression.  Plaintiff stated that he thinks he was diagnosed with schizophrenia.  He is under the care of a psychiatrist,

taking medication as prescribed, and stated that he feels fine at this time.  Plaintiff admitted to drinking one-half pint of alcohol daily and smoking cigarettes and marijuana in the past but stated he does not anymore.

Plaintiff's blood pressure reading was normal 130/82 and he weighed 282 pounds at a height of 5'6".  He did not appear to be in acute distress and ambulated without assistance.  His mental status was alert and oriented to time, place, and situation.  He was cooperative with the examination and did not appear depressed or anxious.  He was able to communicate with no deficits, his recent and remote memory were intact, and he had good insight and cognitive functioning.

Dr. Segura diagnosed: (1) hypertension, which was controlled by medication; (2) Chron's disease, which plaintiff stated he does not think he has anymore; (3) depression, which Dr. Segura considered plaintiff's major medical issue; and (4) poor eyesight, although plaintiff claims he has blurry vision it was better than 20/20 at the exam.  Dr. Segura opined that none of these issues should prevent him from working a regular workday.

### 4.  W.O. Moss Regional Medical Center

Plaintiff presented at 2:05 p.m. at Moss Regional ER on March 31, 2010, complaining of feeling paranoid for about 2 weeks, feeling like he was having a "nervous breakdown," and recent mistrust of family.  Tr. 241-60.  Treatment notes indicate that he was calm and cooperative with triage.  Notes also indicate that he was to be voluntarily admitted to the psychiatric unit but that he signed himself out of the hospital at 7:03 p.m. because he could not wait any longer.

He was seen in the ER again on April 1, 2010.  Tr.  276-300.  He complained of hearing people talking about him and having suicidal thoughts but he denied any plan.  Treatment notes

indicate that he was feeling paranoid toward his wife after smoking THC and having visual hallucinations.  He was admitted to the psychiatric unit.  A psychological evaluation which was conducted on April 4, 2010 gave a diagnosis of psychosis, not otherwise specified, and his prognosis was guarded.  Hospital notes further indicate that plaintiff admitted to smoking 4-5 blunts[1] per day and using alcohol.  He was discharged from Moss Regional on April 12, 2014.  It was noted that his condition had significantly improved and his diagnosis at discharge was psychosis not otherwise specified, and marijuana dependency.

### 5.  Jerry Whiteman, Ph.D.

Plaintiff saw Dr. Jerry Whiteman on July 27, 2011, for a psychological evaluation.  Tr. 301-07.  He reported that he suffered from bipolar disorder, schizophrenia and anxiety.  Dr. Whiteman administered the MMPI-II test, conducted a mental status/clinical interview, and made behavioral observations.  He noted that plaintiff displayed independent locomotion and no significant limitations to motor functions were observed.  Plaintiff reported being raised mostly by his grandmother because his mother was mentally ill.

Plaintiff's health history includes being hospitalized for psychiatric care.  He stated that he now receives outpatient psychiatric care through Lake Charles Mental Health.  He denied ever being involved with illegal drugs but admitted that he used to drink alcohol.  Plaintiff stated that he graduated from high school but needed assistance 2 hours a day in resource.

Dr. Whiteman described plaintiff's mental status as adequate in all spheres.  His general fund of information and long term memory were below average as he was able to identify the last three presidents of the United States but did not know how many days were in a week. Plaintiff's math skills were below average, his pace and persistence were slow and variable, his

---

[1] Plaintiff told the ALJ that a blunt was a cigar.  Tr. 42.  The more proper definition of a blunt is a "cigar that has been hollowed out and filled with marijuana."  Merriam-Webster Dictionary, http://meriam-webster.com (last visited December 23, 2014).

vision and hearing were adequate, and his short term memory and concentrations skills were adequate.

On the MMPI-II test Dr. Whiteman noted that plaintiff's "profile should be interpreted with caution because it may be invalid."  Tr. 304.  Dr. Whiteman attributed this to confusion, exaggeration, or a plea for help.  His diagnostic impressions following his evaluation were schizophreniform disorder, history of alcohol abuse, paranoid personality and avoidant personality disorder.  He opined that plaintiff displayed numerous problems that suggest schizophrenic syndromes but stated that "his test results need to be interpreted cautiously due to the fact that it may not accurately represent his current psychological status due to the fact that he may have distorted some of his responses."  Tr. 305.  He described plaintiff as a suspicious, hostile, tense, anxious and often angry individual.

On July 29, 2011, Dr. Whiteman completed a mental medical source statement wherein he found that plaintiff had slight limitations in his ability to understand and remember short, simple instructions and carry out simple instructions. He found that he had moderate limitations in his ability to understand and remember detailed instructions, carry out detailed instructions, and to interact appropriately with the public, supervisors, and with co-workers.[2]  Plaintiff had marked limitations in the ability to make judgments on simple work-related decisions, respond appropriately to work pressures, and respond appropriately to changes in a routine work setting. Plaintiff had no extreme limitations.

Plaintiff saw Dr. Whiteman again on August 12, 2011, to assess his intellectual functioning.  Tr. 311-312.  This report was completed after the administrative hearing and was not considered by the ALJ in his August 22, 2011 opinion.  Dr. Whiteman's August 12, 2011,

---

[2] Interestingly, Dr. Whiteman also found that plaintiff had marked limitations in his ability to interact appropriately with the public and supervisors.

report is nonetheless part of the administrative record on review in this court because it was submitted to the Appeals Council. *See Higginbotham v. Barnhart,* 405 F.3d 332, 336 (5th Cir. 2005).

At the examination, Dr. Whitman administered the Wechaler Adult Intelligence Scale – IV test ("WAIS"), reviewed his prior assessment data, and made behavioral observations. Dr. Whiteman noted that plaintiff displayed sufficient cooperation and provided a valid assessment at this visit. On the WAIS test plaintiff scored a full scale IQ of 62 , verbal comprehension of 66, perceptual reasoning of 67, working memory of 66 and processing speed index of 74. Dr. Whiteman opined that plaintiff's cognitive abilities reflect mild mental retardation which deficits existed before the age of 22. He based his opinion on the fact that plaintiff has a "lengthy history of academic struggles and resource room assistance." Tr. 312.

### III.
### STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial

evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

# IV.
# LAW AND ANALYSIS

### A. *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months. 42 U.S.C. § 423(d)(1)(A). The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[3]; (3) whether the claimant's impairment meets or

---

[3] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520).  If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy.  *Id.*  "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding."  *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step.  *Id.* (citing 20 C.F.R. § 404.1520(a)).  On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step.  *Id.*  Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC).  *Id.*  "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record."  *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; Social Security Ruling 96-8p.  The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations.  20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the

---

If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process.  20 C.F.R. §§ 404.1520, 404.1523.  A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled.  *Id.*

sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work. *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was not disabled at Step 2 of the sequential analysis. The ALJ found that plaintiff suffered from the medically determinable impairments of obesity and affective disorder but that those impairments were not severe.

### B.  Plaintiff's Claims

In his appeal plaintiff argues that substantial evidence does not support the ALJ's decision.  Specifically, he sets forth the following arguments:

1.  The Appeals Council failed to follow its own policies and procedures regarding the receipt of additional evidence.

2.  The new evidence before the court undermines the ALJ's Step 2 determination that plaintiff's impairments are non-severe.

3.  The ALJ applied an improper legal standard at Step 2 to conclude that plaintiff's medically determinable impairments were non-severe.

After consideration of the record and for reasons detailed below we reject plaintiff's claims.

### 1.  Did the Appeals Council fail to follow its own policies and procedures regarding the receipt of new evidence?

Plaintiff argues that the Appeals Council erred when it failed to expressly determine whether plaintiff's post-hearing submission of evidence met the "new and material" evidence standard.  Plaintiff cites 20 CFR 416.1470(b) in support of his argument which states,

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  …  It will then review the case if it finds that the administrative law judge's actions, findings, or conclusion is contrary to the weight of the evidence currently of record.

Plaintiff submits that the new evidence, a second report by psychologist Jerry L. Whiteman, reveals that plaintiff has sub-average intelligence and deficits in adaptive behavior that existed prior to the age of 22.  Thus, he contends that the Appeals Council should have overturned the ALJ's decision.

The Commissioner argues that the record reflects that the Appeals Council properly considered the post-decision evidence.  Citing *Higginbotham v. Barhart,* 405 F.3d 332,336 (5th Cir. 2005), the Commissioner maintains that the Council's decision to deny review was proper and any action by the council is not separately reviewable by this court.  We agree.

Here, the Appeals Council clearly considered Jerry L. Whiteman's psychological evaluation dated August 12, 2011.  In its Order dated September 25, 2012, the Appeals Council stated that it "has received additional evidence which it is making part of the record."  Tr. 4.  It listed as additional evidence the following exhibit:

> Exhibit 12F    Representative brief dated March 10, 2012 and supplemental psychological evaluation dated August 12, 2011.

*Id.*  The Appeals Council stated it would review plaintiff's case if it "receive[d] new and material evidence and the decision is contrary to the weight of all the evidence now in the record."  Tr. 1. It further stated that it looked at the reasons plaintiff disagreed with the Commissioner's decision and the "additional evidence listed on the enclosed Order of the Appeals Council."  *Id.*  A review of the record before this court shows that Jerry L. Whiteman's two page supplemental report is included in Exhibit 12F.  Tr. 309-12.  The Appeals Council concluded that the new evidence did not provide a basis for changing the ALJ's decision.  Tr. 1-3.

In light of the above, it can be said without uncertainty that the Appeals Council considered Jerry L. Whiteman's report.  Plaintiff's argument is without merit.

**2.  Does the new evidence submitted to the Appeals Council undermine the ALJ's Step 2 determination?**

Plaintiff argues that the supplemental psychological report by Dr. Whiteman which indicates a full scale IQ score of 62 establishes a severe mental impairment – mild mental retardation.  He contends that the IQ score coupled with this severe impairment at would produce per se entitlement under Listing 12.05(C).

In response, the Commissioner contends that the post-decision evidence does not satisfy plaintiff's burden of proving he had severe mild mental retardation.  The Commissioner argues that the other medical evidence in the record and the non-medical evidence, including plaintiff's application materials and his face-to-face interview with the Social Security Administration, provide substantial evidence to support the ALJ's determination that he had no severe impairments.

20 C.F.R. Part 404, Subpart P, Appendix I, Listing 12.05 provides:

> Mental Retardation:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> …
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 **and** a physical or other mental impairment imposing an additional significant work-related limitation or function[.] (emphasis added).

The listings set out at 20 C.F.R. § 404 are descriptions of physical and mental illnesses and abnormalities which are categorized by the body system they affect.  The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just "substantial gainful activity."  *Sullivan v. Zebley,*

110 S.Ct. 885, 891 (1990); 20 C.F.R. §§ 404.1525, 416.925.  Thus, a finding that a claimant's impairment satisfies a listing compels a finding of disabled without any further analysis. Listings criteria are "demanding and stringent."  *Falco v. Shalala,* 27 F.3d 160, 162 (5th Cir.1994).  A mere diagnosis of a condition will not suffice.  The claimant "must have a medically determinable impairment(s) that satisfies all of the criteria in the listing." §§ 404.1525(d), 416.925(d).  The burden of proof rests with a claimant to provide and identify medical signs and laboratory findings that support all criteria for a Step 3 listing determination. *Sullivan,* 110 S.Ct. at 891.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  *Selders v. Sullivan,* 914 F.2d 614, 619 (5th Cir.1990).

We agree with the Commissioner that the evidence does not support a finding that plaintiff's alleged mental impairment, mild mental retardation, imposes an additional and significant work related limitation or function.

While Dr. Whiteman opined that plaintiff suffered from mild mental retardation with an onset prior to the age of 22, he never indicated that it affected his ability to work in any way.  To the contrary, the record evidence[4] shows that plaintiff maintained steady employment at various jobs from 1997 to 2009.  Tr. 203.   Additionally, the medical report from psychologist Dr. Bolwahnn establishes that plaintiff entered kindergarten on time, graduated from high school, had no impairments in social functioning, his intellectual functioning was low average, and he could understand and follow simple instruction.  Tr. 238-40.  Dr. Bolwahnn opined that although plaintiff suffered from some mild mood concerns, they do not significantly impact his overall performance or level of functioning.  *Id.*  He further noted that plaintiff enjoyed playing an instrument, was interested in putting a band together, and had a chauffeur's license.  *Id.*

---

[4]  In connection with his application for benefits plaintiff submitted a "Work History Repost" detailing his employment activities.  Included in the report are his past jobs as a food preparer, dishwasher, barber, cook, delivery driver, and stocker.  Tr. 202-09.

Following his physical examination, Dr. Segura opined that plaintiff was capable of sitting, walking and/or standing for a full workday.  Tr. 262-65.  He found that plaintiff could lift/carry objects without limitation, hold a conversation, respond appropriately to questions, carry out and remember instructions.  *Id.*

As previously stated, plaintiff has the burden of proving that he meets each and every criteria in the Listing and if only some impairments are manifested the Listing is not met. Simply put, there is no evidence that plaintiff's impairment rendered him unable to work.  Since plaintiff has not shown that he meets all the criteria of the Listing 12.05(C), the ALJ was correct in finding that plaintiff was not disabled under the Social Security Act.  Substantial evidence supports the finding that plaintiff's impairments do not imposing an additional significant work-related limitation or function.  For these reasons, the court finds that this argument is without merit.

### 3.   Did the ALJ apply an improper legal standard at Step 2?

Plaintiff argues that the ALJ erred at Step 2 of the evaluation.  First plaintiff asserts that the ALJ applied the incorrect legal standard in order to determine if plaintiff's impairments should be considered severe and second he contends that the ALJ erred in finding that plaintiff's mental impairment of affective disorder did not meet the durational requirement.  Plaintiff asserts that the ALJ improperly applied a "significantly limiting" standard instead of the correct "slight abnormality" standard as enunciated in *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.1985).  He also argues that the ALJ improperly determined that plaintiff's mental condition failed to meet the twelve month durational period of impairment.  Plaintiff maintains that these legal errors require reversal.

The Commissioner asserts that even if the ALJ applied an incorrect legal standard,

plaintiff failed to present evidence that any of his medically determinable impairments were severe or had any effect on his ability to work.  Thus, the Commissioner maintains that any error was harmless.  The Commissioner argues that substantial evidence supports the ALJ's finding that plaintiff's impairments or combination of impairments were not severe; thus he maintains that reversal is not required.

Under 20 C.F.R. §§ 404.1520(c), 419.920(c), an impairment or combination of impairments is considered "not severe" if claimant's physical or mental ability to do basic work activities is not "significantly limited."  However, the Fifth Circuit has adopted a different standard for determining whether an impairment is severe.  In *Stone,* the Fifth Circuit held that an impairment can be considered as *not severe* only if it is a *slight abnormality* having such a minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.  *Stone v. Heckler,* 752 F.2d at 1101.  The Fifth Circuit stated in *Stone* that unless the correct standard was either set forth by reference or expressly stated in its opinion, it would assume the ALJ did not apply the correct standard.  *Id.* at 1106.

Subsequent to its decision in *Stone* the Fifth Circuit published a decision holding that if substantial evidence supports a non-severity finding, any error by the ALJ in not following the standard set out in *Stone* does not automatically require remand unless the claimant is actually harmed by the error.  *Taylor v.* Astrue, 706 F.3d 600, 603 (5th Cir. 2012).  Citing *Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir.1988), the court noted that "procedural perfection is not required unless it affects the substantial rights of a party."  Under *Taylor*, a *Stone* error does not require remand but is instead subject to a harmless error analysis.  In *Taylor* the court found substantial evidence supported the ALJ's finding that claimant's mental health claims were not

severe enough to prevent him from holding substantial gainful employment.  Thus, the court

found "any error by the ALJ in not following the procedures set out in *Stone* [wa]s harmless."

*Id.*

In his analysis in this case the ALJ found:

> The claimant has the following medically determinable
> impairments: obesity and affective disorder (20 CFR 404.1521 *et*
> *seq.* and 416.921 *et seq..).*  These are not severe impairments
> within the meaning of *Stone v. Heckler,* 752 F.2d 1099 (5th Cir.
> 1985) and the Regulations.
>
> . . .
>
> The claimant does not have an impairment or combination of
> impairments that has significantly limited (or is expected to
> significantly limit) the ability to perform basic work-related
> activities for 12 consecutive months; therefore, the claimant does
> not have a severe impairment or combination of impairments (20
> CFR 416.921 *et seq.* and 416.921 *et seq.*).

Tr. 78.

Within the body of his opinion, the ALJ explained that at Step 2 of the evaluation he must

determine if the claimant has a medically determinable impairment that is severe or not severe.

He explained that an "impairment or combination of impairments is 'not severe' when medical

and other evidence establish only a slight abnormality or a combination of slight abnormalities

that would have no more than a minimal effect on an individual's ability to work."  Tr. 77.  The

ALJ went on to find that the medical evidence did not support the existence of severe

impairments that cause functional restrictions.  After carefully reviewing all the evidence before

him and weighing the opinion testimony, the ALJ found that plaintiff's impairments singularly or

in combination do not restrict him from performing normal daily activities or completing normal

routine tasks.  Tr. 84.  Although the ALJ may have stated that plaintiff's impairments do not

"significantly limit" his ability to perform basic work-related activities in his opinion, we

-17-

conclude that after reading the opinion as a whole he properly analyzed plaintiff's impairments using the standard enunciated in *Stone*.

The ALJ reviewed and discussed the medical records introduced and considered plaintiff's testimony before ultimately determining that plaintiff was capable of performing basic work activities.  The ALJ considered the opinion of Bryan Bolwahnn, Ph.D. who performed a psychological examination on March 26, 2010, and ultimately found that plaintiff's memory was not impaired, his concentration was not impaired, his cognitive functioning was low average, he was able to understand and follow simple instructions, and was capable of handling funds.  He opined that plaintiff had a global assessment functioning of 69 which indicated some mild symptoms in social, occupational, or school functioning.  Tr. 80.  Dr. Johnny Segura completed a physical examination on May 15, 2010, and determined that plaintiff's impairments would not preclude him from working a regular workday.  Tr. 81.  He considered the medical records from plaintiff's stay at Moss Regional Hospital which indicated at discharge that he suffered from psychosis not otherwise specified and marijuana dependence.  *Id.*

The ALJ considered Jerry Whiteman's psychological evaluation dated July 27, 2011.  Tr. 81-82.  The ALJ gave no weight to Dr. Whiteman's report or his opinion on plaintiff's ability to function due to his warning that plaintiff's evaluation was suspect and the examination results invalid.  Tr. 82.  Additionally, the ALJ noted that while plaintiff discussed his alcohol use with Dr. Whiteman, he failed to mention his drug abuse, daily smoking of marijuana, or his subsequent psychiatric treatment.

The ALJ found that plaintiff's allegations of physical and mental dysfunction were not credible to the extent alleged.  He explained that while he alleged vision problems, the testing established his vision was 20/20.  Plaintiff's hypertension had no end-organ damage and was

manageable with medication.  Finally, the ALJ noted that plaintiff's own examining source, Dr. Whiteman, noted that he provided invalid results on his mental status examination.  Tr. 82.

The ALJ additionally evaluated plaintiff's mental impairment with reference to Listing 12.00 C (20 C.F.R, Part 404, subpart P, Appendix I) and the four function areas known as the "paragraph B" criteria.  He determined that plaintiff's mental impairment caused no more than mild limitation in any of the first three functional areas and found no episodes of decompression in the fourth area, thus finding his mental impairment to be non-severe.  Tr. 83-84.

Although plaintiff argues that the ALJ improperly applied a 12 month durational requirement in relation to his mental impairments, the ALJ's opinion does not reflect that he considered any durational requirement in relation to plaintiff's mental impairment.  We find that the medical records submitted are entirely consistent with a *Stone* finding of non-severity.

Here, the ALJ cited the *Stone* standard and properly evaluated the evidence before making his determination that plaintiff's impairments were not severe and did not preclude him from engaging in basic work activities.  We conclude that he did not apply the improper legal standard simply because he used the words "significantly limits" in his opinion.

Furthermore, even assuming the ALJ did not apply the correct standard, we find any error to be harmless.  As evidenced by the medical records detailed herein, substantial evidence supports the ALJ's decision.  Plaintiff does not argue and has failed to demonstrate that had the ALJ found his impairments to be severe, he would have reached a different outcome and that he was prejudiced as a result.  Therefore, we find that if any error was committed, it was harmless.

We have also considered the post-judgment evidence submitted to the Appeals Council which is properly a part of this record on review.  Plaintiff underwent intellectual testing on August 12, 2011 and a subsequent report was prepared Dr. Jerry Whiteman.  Tr. 311-12.  He

opined that plaintiff's cognitive abilities reflect mild mental retardation which deficits existed prior to the age of 22 based on the fact that he has a "lengthy history of academic struggles and resource room assistance."  Tr. 312.  Dr. Whiteman does not indicate in his report that he reviewed any of plaintiff's educational records or any medical records of his treating or examining physicians.  In fact, the only evidence Dr. Whiteman relied on was plaintiff's own report that he struggled in school, repeated sixth and ninth grade, and required resource room assistance.  Plaintiff's high school transcript which was admitted into evidence, however, reveals that he completed high school on time without repeating the ninth grade and makes no mention of any resource room assistance.  Tr. 236.

In sum, we find that Dr. Whiteman's opinion is not supported by any medical evidence and does not establish in and of itself that plaintiff had a severe impairment.  Thus, we find this argument without merit.

### C.  Plaintiff's Subsequent Application for Benefits

In a supplemental pleading plaintiff submits evidence that a subsequent application for supplemental security benefits was granted on February 20, 2014.  Doc. 18.  Plaintiff argues that this subsequent award supports his assertion that his low IQ score satisfied the per se or presumptive entitlement to benefits.

The Commissioner maintains that the February 20, 2014, determination, which comes more than two years following the ALJ's decision in this case, is outside of the administrative record and not properly before this court.  We agree.

The Fifth Circuit case cited by the Commissioner, *Winston ex rel. D.F. v. Astrue,* 341 F. App'x 995 (5th Cir. 2009), makes clear that a subsequent approval of benefits is not relevant to

whether or not the ALJ's decision in this case is supported by substantial evidence.  As stated in *Winston*:

> Winston's second assertion—that the district court's error is made plain by the approval of Winston's second application—is similarly unavailing.  Whether a subsequent application is approved is of no moment to the question of whether the prior application was meritorious *at the time of consideration.*  Here, the ALJ determined that the evidence at the time indicated D.F. was not disabled.  We may disturb this judgment only if "there is a conspicuous absence of credible choices or no contrary medical evidence."

*Id.* at 998 (quoting *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).  Plaintiff's subsequent award of benefits was decided on an entirely different record which is not before us and has no bearing on our decision in this case.

**V.**
**CONCLUSION**

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled.  It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN**

**ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 6th day of February, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE